IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNA ROTHERMEL,

Plaintiff,

v.                                                                    Case No.  22-1194-JWB

SEDGWICK COUNTY, KANSAS,
BOARD OF COMMISSIONERS,
SHERIFF JEFF EASTER, and
TONY LOSAVIO

Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on Defendants Sedgwick County Board of Commissioners and Sheriff Jeff Easter's motion for summary judgment and cross-claim for declaratory judgment against Tony LoSavio (Doc. 48.)  The motion is fully briefed and ripe for decision.  (Docs. 48, 54, 55.)  The motion is GRANTED in part and DENIED in part for the reasons stated herein.

I.      **Factual Background**

Plaintiff Kenna Rothermel was an inmate at the Sedgwick County Detention Facility during the period of February 2021 through May 2021.  (Doc. 42 ¶ 2.a.i.)  Defendant Sheriff Jeff Easter ("Sheriff Easter") was the duly elected Sheriff of Sedgwick County during this period.  (*Id.* at ¶ 2.a.ii.)  Defendant Deputy Tony LoSavio ("Deputy LoSavio") was employed at the Sedgwick County Jail during this time period as well.  (*Id.* at ¶ 2.a.iv.)

Plaintiff was sexually assaulted by Deputy LoSavio on May 1, 2021.  (Doc. 48-8 at 2–3.)  Prior to the sexual assault, Plaintiff alleges Deputy LoSavio had been harassing her for a few months.  (Doc. 48-9 at 3.)  On May 4, 2021, Plaintiff reported to a mental health practitioner that

1

Deputy LoSavio had been harassing her. (*See id.*) The mental health practitioner then informed the Sedgwick County Detention Sergeant's Office that an inmate needed to report a Prison Rape Elimination Act ("PREA") violation. (*See id.*) Plaintiff reported to the interviewing Sergeant that Deputy LoSavio had told Plaintiff he wanted her to touch him, and that on multiple occasions he had exposed himself to her and touched himself while looking at her. (*See id.*; Doc. 54-1 at 23; Ex. 14, Rothermel Axon Video Interview 1:24–3:20.) On the night of May 1st, Plaintiff claims Deputy LoSavio opened her cell door and stood between the door and the door frame with his penis out. (Ex. 15, Rothermel Video Interview 11:35:30–11:36:10.)[1] Plaintiff then performed oral sex on Deputy LoSavio. (Ex. 16, LoSavio Video Interview 04:41:00–04:45:30.) Deputy LoSavio was arrested on May 4th and pled guilty to two counts of unlawful sexual relations with an inmate on February 23, 2022. (Doc. 48-8 at 2–3.)

Prior to Plaintiff's allegations, two inmates at the Sedgwick County Detention Center filed complaints of sexual harassment and assault against Deputy LoSavio. The first complaint was initially investigated in 2019. (Doc. 48-11 at 11.) An inmate claimed that Deputy LoSavio told her that he wanted to put his penis in between her buttocks. (McMahon Dep., Doc. 48-4 at 15:23–16:2; Doc. 48-11 at 4.) Deputy LoSavio denied making this statement, and the inmate did not pursue the claim further. (Doc. 48-11 at 11.) The detective investigating this first complaint was unable to determine whether the alleged events occurred since he only had facts from Deputy LoSavio's perspective. (McMahon Dep., Doc. 54-6 at 30:6–21.) Sheriff Easter believed the complaint was unsubstantiated because there was no supporting evidence other than the statement from the complainant.[2] (Easter Dep., Doc. 54-4 at 24:16–24.) Despite Sheriff Easter's belief that

---

[1] Deputy LoSavio maintains that Plaintiff removed his penis from his pants. (Ex. 16, LoSavio Video Interview 4:43:30–4:44:45.)
[2] The relevant nomenclature used by jail personnel in evaluating these sorts of complaints includes the term "unsubstantiated," which means "[e]vidence was insufficient to make a final determination that the event occurred,"

the claim was unsubstantiated and the detective's position that he could not determine whether the alleged events had occurred, the sexual assault form records the final determination of the investigation as "unfounded."  (Doc. 54-1 at 8.)  Additionally, the detective who investigated Complainant 1's allegations claimed to have not marked on the sexual assault form that the claim was "unfounded."  (McMahon Dep., Doc. 54-6 at 10:11–24.)  The second complaint was filed in December 2019, when an inmate alleged that Deputy LoSavio entered her cell to unclog the toilet and touched her breast.  (Doc. 48-12 at 9; Robertson Dep., Doc. 48-5 at 10:6–11.)  However, upon review of the security footage, the detective investigating this second complaint was again unable to determine whether the alleged misconduct occurred because the video camera did not provide full coverage of the complaining inmate's cell and he was unable to see what, if any, interactions occurred between the inmate and LoSavio while the latter was in the cell.  (Doc. 48-12 at 10; Robertson Dep. Doc. 48-5 at 15:8–16:10.)  The detective investigating this second complaint thus determined it was unsubstantiated.  (Doc. 48-12 at 10.)  Sheriff Easter was aware of these two investigations against LoSavio, and he reviewed the investigations when they occurred.  (Easter Dep., Doc. 48-2 at 14:24–16:2.)  However, Sheriff Easter did not reassign Deputy LoSavio because the Sheriff's Office believed both complaints were unsubstantiated.  (*See id.* 34:4–14.)[3]

## II.    Procedural Background

Plaintiff asserts three claims against the Board of County Commissioners of Sedgwick County ("BOCC") and Sheriff Easter—herein known as ("Defendants").  The first is a 42 U.S.C. § 1983 claim for violating Plaintiff's Eighth and Fourteenth Amendment right against cruel and unusual punishment. (Doc. 42 ¶ 4.a.ii.)   The second is a state law negligence claim against

---

(Doc. 54-1 at 8); as well as the term "unfounded," which means "[t]he event was determined NOT to have occurred."  (*Id.*)
[3] The court uses additional facts in its analysis of the claims.

Defendants for failing to protect Plaintiff against Deputy LoSavio's alleged known proclivity to commit assault and battery on female inmates. (*Id.* ¶ 4.a.v.). The third claim is also a state law claim, and it is based upon respondeat superior, in which Plaintiff asserts negligence, battery, and outrageous conduct against Defendants for Deputy LoSavio's conduct. (*Id.* ¶ 4.a.vi.) Defendants seek summary judgment for all Plaintiff's claims filed against them.

Defendants also seek declaratory judgment against Defendant Deputy LoSavio. Defendants seek summary judgment on the issues that (1) they are not required to defend Deputy LoSavio, and (2) they are not required to indemnify Deputy LoSavio. (*Id.* ¶ 4.c.)

Deputy LoSavio was convicted of unlawful sexual relations with Plaintiff in Sedgwick County District Court. (*Id.* ¶ 2.a.ix.) He was fired from the Sheriff's Office, (Easter Dep., Doc. 48-2 at 12:18–23), was sentenced for his crimes, and is currently incarcerated with the Kansas Department of Corrections. (Doc. 42 ¶ 2.a.ix.)[4]

## III.   Standard

Summary judgment is appropriate if the moving parties demonstrate that there is no genuine dispute as to any material fact and the movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is "material" when it is essential to the claim, and the issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor. *Haynes v. Level 3 Commc'ns*, 456 F.3d 1215, 1219 (10th Cir. 2006). The court views all evidence and reasonable inferences in the light most favorable to the nonmoving party. *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

In considering a motion for summary judgment, the facts set forth in the motion must refer "with particularity to those portions of the record upon which" the moving party relies. D. Kan.

---

[4] Additional facts are discussed in the analysis section.

R. 56.1(a).  "All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." *Id.*  To properly dispute a proposed statement of material fact, the opposing party must "refer with particularity to those portions of the record upon which the opposing party relies." D. Kan. R. 56.1(b)(1).  Failure to properly controvert a proposed fact that is properly supported will result in a determination that the fact is admitted.  *Coleman v. Blue Cross Blue Shield of Kansas, Inc.*, 287 F. App'x 631, 635 (10th Cir. 2008) (finding that the "district court was correct to admit all facts asserted in Blue Cross's summary judgment motion that are not controverted by a readily identifiable portion of the record.") (internal quotation and citation omitted).

## IV.    Analysis

The court first analyzes BOCC's defense as an improper party before analyzing Sheriff Easter's defenses against Plaintiff's state and federal claims.

### A.  Board of County Commissioners

Defendant BOCC argues that it is not a proper party to this dispute, and thus, Plaintiff's claims against it must be dismissed.  (Doc. 48 at 15.)  Plaintiff responded to BOCC's defense by first arguing BOCC forfeited the argument because it failed to state the defense in its answer or the pretrial order.  Second, Plaintiff argues that if BOCC did not forfeit the argument that it is an improper party, then BOCC is comparatively liable for Deputy LoSavio's conduct because it establishes the budget for jail operations.  (Doc. 54 at 17–18.)  The court holds that Plaintiff's claim against the BOCC cannot stand because it is an improper party to this lawsuit and it did not forfeit the defense.

First, the BOCC did not forfeit the argument that it is an improper party in this suit.  In the pretrial order, it asserted that it has no role in the operation of the jail and that by statute the sheriff

controls the jail.  (Doc. 42 at 7.)  Thus, Defendant BOCC did not forfeit the argument by failing to raise it in the pretrial order.

Second, under Kansas law, the sheriff is responsible for promoting, demoting, and dismissing deputies who assist the sheriff with carrying out the office's official duties.  K.S.A. § 19-805(a).  Additionally, section 19-805(a) clearly states that the sheriff is responsible for the misconduct of his deputies.  *Id.*  In accordance with K.S.A 19-805, the court in *Gardiner v. McBryde*, No. 15-3151-DDC-JPO, 2020 WL 42272 (D. Kan. Jan. 3, 2020), held that a claim against a Kansas board of county commissioners for the conduct of a deputy sheriff fails as a matter of law.  *Id.* at *7.  This is so because an elected county sheriff is not a subordinate of the board of county commissioners.  *See Est. of Belden v. Brown Cnty.*, 46 Kan. App. 2d 247, 287, 261 P.3d 943, 970 (Kan. Ct. App. 2011) (citing *Bd. of Cnty. Comm'rs of Cnty. of Lincoln v. Nielander*, 275 Kan. 257, 261, 62 P.3d 247, 251 (Kan. 2003)).  Indeed, a board of county commissioners cannot mandate "operational practices" in a jail.  *See Est. of Belden v. Brown Cnty.*, 261 P.3d 943, 970 (2011).  As a result, a board of county commissioners "cannot be held legally liable for the deleterious consequences of substandard jail policies, procedures, or practices."  *Id.*  Here, the undisputed and stipulated facts indicate that Sheriff Easter is an elected official.  (Doc. 42 ¶ 2.a.ii.)  As such, under Kansas law, the BOCC does not have authority to mandate policies or hire and train jail staff members.  Plaintiff's claim against the BOCC fails as a matter of law.

Moreover, Plaintiff's argument that the BOCC is comparatively liable because it is responsible for establishing the operating budget for Sedgwick County Detention Facility is unavailing.  (Doc. 54 at 18.)  Plaintiff relies on *Thomas v. Cnty. Comm'rs of Shawnee Cnty.*, 40 Kan. App. 2d 946 (2008), *aff'd*, 293 Kan. 208 (2011), for the legal rule that a county has an independent duty to act with reasonable care, and thus, can be held liable for the negligent hiring

and retention of an employee they knew was unfit or incompetent.  (Doc. 54 at 18.)  There are two problems with Plaintiff's argument.  First, Plaintiff overstates the legal rule in *Thomas*.  Plaintiff claims the court in *Thomas* held that a county owes an independent duty to not negligently supervise or retain its employees.  (Doc. 54 at 18.)  However, the court in *Thomas* did not hold that a county itself has an independent duty; rather, the court held that if a county commissioner was individually negligent, then it was possible the county could be liable for the commissioner's negligent conduct.  *See Thomas*, 40 Kan App. 2d at 966.  Hence, Plaintiff conflates county liability based upon the negligent conduct of a county commissioner with county liability based upon a duty of care outside the conduct of its commissioners or employees.  Second, *Thomas* is factually inapposite to the case at hand.  Shawnee County Adult Detention Center is not operated by the Shawnee County Sheriff.  The Shawnee County Commissioners transferred authority to operate the jail and mandate policies from the Sheriff to the Shawnee County Department of Corrections in July of 1981.  (Doc. 55-1 at 2.)  Simply put, *Thomas* is factually inapplicable to the present case.  Indeed, Plaintiff even admits that the BOCC is not responsible for the operational policies and practices of Sedgwick County Detention Center.  (*See* Doc. 54 at 18.)  Hence, Plaintiff's argument that the BOCC should be comparatively liable fails as a matter of law.

Therefore, Defendants' motion for summary judgment on the federal and state claims against the BOCC is granted because it is not a proper party to this lawsuit.

### B.  Sheriff Jeff Easter

Because the court granted BOCC summary judgment on Plaintiff's state and federal claims against it, (*see supra* Section IV.A), the remaining Defendant with respect to the claims at issue in this motion is Sheriff Easter.  The court now takes Plaintiff's federal and state law claims against him in turn.

1.      *Eleventh Amendment Immunity*

Defendant Sheriff Easter claims immunity under the Eleventh Amendment.  (Doc. 48 at 16.)  The Eleventh Amendment "is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."  *See Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009).  However, the Supreme Court has refused to extend Eleventh Amendment immunity to counties, and hence, county officers who are sued in their official capacity for money damages "are generally not entitled to Eleventh Amendment Immunity."  *Couser v. Gay*, 959 F.3d 1018, 1023 (10th Cir. 2020).

The Supreme Court and the Tenth Circuit in the cases *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) and *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250 (10th Cir. 2007) developed a multifactor framework to determine whether an entity or actor is an arm of a state or a county.  *Couser*, 959 F.3d at 1023.  In *Couser*, the Tenth Circuit applied the four factors from *Steadfast* to determine whether a sheriff acting in his official law enforcement capacity was a state or county actor under Kansas law.  *See id.* at 1026–31.  The four factors are:

(1) "the character ascribed to the [defendant] under state law";

(2) "the autonomy accorded the [defendant] under state law;

(3) "the [defendant's] finances"; and

(4) "whether the [defendant] in question is concerned primarily with local or state affairs."

*Id.* at 1024 (quoting *Steadfast*, 507 F.3d at 1253).  The Tenth Circuit in *Couser* held that, when acting in his law enforcement capacity, the sheriff was a county official; hence, the Eleventh Amendment did not confer immunity.

Defendant Sheriff Easter attempts to argue that the law has changed since *Couser* such that now a Kansas county sheriff is an actor of the state and can claim immunity under the Eleventh

Amendment.  Defendant focuses on the first *Steadfast* factor and claims that Article IX of the Kansas constitution was amended in 2022 to explicitly categorize an office of sheriff as a state actor.  (Doc. 48 at 15.)

On the contrary, the 2022 amendment to the Kansas constitution added references to sheriffs under Article IX § 2, a section expressly denominated "County and township officers." Thus, to the extent the amendment bears on the Eleventh Amendment calculus, it weighs in favor of characterizing a sheriff as a county official, not a state actor.  Indeed, in *Couser*, the Tenth Circuit looked to Article I § 1 of the Kansas constitution – the section that identifies officers of the *state* – and noted the absence of any mention of sheriffs therein.  *Couser*, 959 F.3d at 1026.  Next, the court of appeals noted that Article IX § 2 of the state constitution – a section addressing county officers – authorizes the legislature to provide for the establishment of county offices.  *Id.*  And since the legislature acts by statute, not by constitutional amendment, the court then observed that the legislature did in fact provide for sheriffs as county officers under K.S.A. 19-801a *et seq.  Id.*

The court of appeals contrasted Kansas' approach with that of Alabama, where the Alabama constitution explicitly provides that sheriffs are part of the state's executive department. *Id.* at 1027.  The Tenth Circuit then completes this line of reasoning as follows:

> The Kansas Constitution, unlike Alabama's, does not expressly designate sheriffs as members of the state executive department. The Kansas statutes instead include sheriffs in the provisions recognizing county officers.

*Id.*  Thus, it is clear from *Couser* that it is not the mere mention of the word sheriff in the state constitution that is material to the first *Steadfast* factor; rather, it is how the constitution characterizes the sheriff, whether as a state or county official, to the extent it does so at all.  After the 2022 amendment, the Kansas constitution characterizes a sheriff as a county officer, which is consistent with the way Kansas statutes treated that office prior to the 2022 amendment.  Thus, the

court finds that the 2022 amendment to the Kansas constitution was not intended to change whether the law views a sheriff as a state or county actor.  Moreover, the court concludes that, under the first *Steadfast* factor, state law characterizes the sheriff as a county officer.

The sheriff did not analyze the remaining *Steadfast* factors, and the court has held that sheriffs are county officials.  *See Reyes v. Bd. of Cnty. Comm'rs of Sedgwick Cnty.*, No. 07-2193-KHV, 2008 WL 2704160, at *9 (D. Kan. July 3, 2008).  Therefore, Defendant Sheriff Easter's motion for summary judgment on the basis of Eleventh Amendment immunity is denied.

2.    *Sheriff Easter Monell Liability*

Plaintiff sues Defendant Sheriff Easter solely in his official capacity under § 1983 for violating Plaintiff's Eighth and Fourteenth Amendment right against cruel and unusual punishment.  (Doc. 42 at 8.)  An action against a government officer in their official capacity is just a different way to plead "an action against the county or municipality they represent."  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citing *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 n.55 (1978).  Hence, Plaintiff brings a *Monell* claim against Defendant Sheriff Easter and the court analyzes Plaintiff's claim under the same analytical framework that governs claims against municipalities and counties for constitutional violations.  *Id.*

A plaintiff establishes municipal liability through this general analytical framework: "[a] policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury" and the policy actually caused the constitutional violation.  *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Thus, there are three main elements a plaintiff must establish: "(1) official policy or custom, (2) causation, and (3) state of mind."[5]  *Id.* These three elements are broken down in turn.

---

[5] Typically, before reaching the question of whether (1) an official policy or custom (2) was the driving force behind the sexual battery committed against Plaintiff, and (3) Defendant was deliberately indifferent, Plaintiff must

An official policy or custom can take shape in a variety of formats: a formally adopted and promulgated regulation or policy; an informal custom so widespread that it becomes a policy with the force of law; the final decision from a policymaker with decision-making authority; or a failure to adequately train or supervise employees so long as it amounts to deliberate indifference. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010); *see also Schneider*, 717 F.3d at 770.

Causation is established if the policy or practice is the "'moving force' behind the injury alleged." *See Brown v. Flowers*, No. 23-7006, 2023 WL 6861761, at *9 (10th Cir. Oct. 18, 2023) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997)). If the constitutionality of a municipal policy is not at issue, but instead liability is based upon inadequate training or supervision, then the causation element is analyzed more rigorously "to ensure that the municipality is not held liable solely for the actions of its employees." *Brown*, 520 U.S. at 405. This is so because municipal liability cannot be based upon vicarious liability. *See Schneider*, 717 F.3d at 770.

The "state of mind" element is the deliberate indifference standard. To satisfy the deliberate indifference standard, a plaintiff must demonstrate that the municipality, or as is the case here, Sheriff Easter, was on notice—actual or constructive—that the policy, action, or failure to act "is substantially certain to result in a constitutional violation, and [he] consciously or deliberately cho[se] to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307

---

establish that an *individual* agent or employee of Sheriff Easter violated Plaintiff's Eighth and Fourteenth Amendment right to be free from attack by prison guards and secure in her bodily integrity. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). For purposes of this motion, however, the court does not need to decide whether an individual employee violated Plaintiff's Fourteenth and Eighth Amendment rights because Sheriff Easter concedes for *Monell* liability that Deputy LoSavio did so. (Doc. 48 at 17.)

(10th Cir. 1998).  In other words, Plaintiff must demonstrate that Sheriff Easter had knowledge that a type of policy under *Monell* could result in Deputy LoSavio's sexual assault of Plaintiff.

Therefore, the focus of the analysis, under the facts of this case, is whether Plaintiff can establish a dispute of material fact with regard to the following three elements: (1) official policy or custom (in the nature of a failure to train or supervise), (2) causation, and (3) state of mind.

  a. Official Policy or Custom and State of Mind

In this case, Plaintiff alleges that the official policy or custom was that Defendant Sheriff Easter was deliberately indifferent in training and supervising his deputies.

Under the *Monell* liability framework, Plaintiff must identify an official policy or custom. As discussed above, a *Monell* official policy or custom could be a formally adopted and promulgated regulation or policy, an informal custom so widespread that it becomes a policy with the force of law, the final decision from a policymaker with decision making authority, or a failure to adequately train or supervise employees so long as it amounts to deliberate indifference. *See Bryson*, 627 F.3d at 788.  Here, Defendant Sheriff Easter had policies in place prohibiting Deputy LoSavio's conduct and he received training on those policies.  In fact, Plaintiff admits that Defendant Sheriff Easter had policies in place against sexual battery and assault and trained all Sheriff Deputies, including Deputy LoSavio, on those policies.  (*See* Doc. 54 at 19–24.)

The following facts about the training policies are undisputed. All sheriff's deputies working for Sedgwick County Detention Center must attend an eight-week training program. (Easter Dep., Doc. 48-2 at 7:14–8:4.)  There is also a policy that prohibits deputies from having sex with inmates, and every deputy receives training on this policy.  (Anderson Dep., 48-3 at 18:12–19.)  In addition to prohibiting sex with inmates, there is a policy in place that prohibits sexual abuse and sexual harassment of inmates as well.  (Doc. 48-7 at 44.)  If policies are updated

or changed, the Sedgwick County Sheriff's Office informs all deputy sheriffs.  (Easter Dep., Doc. 48-2 at 7:14–8:4.)  Deputy sheriffs are also trained on PREA.  (Anderson Dep., 48-3 at 18:12–19.)

It is also undisputed that Deputy LoSavio attended the eight-week training program.  (Doc. 48-7 at 7.)  Plaintiff does not dispute that during his time at the training academy, Deputy LoSavio underwent training over the Prison Rape Elimination Act.[6]  (Doc. 48 ¶14; Doc. 54 ¶ 14.)  Deputy LoSavio also received an inmate guide that explicitly stated that the Sedgwick County Sheriff's Office prohibits and will not tolerate sexual misconduct and misdeeds with inmates—whether it was consensual or not.  (Doc. 48-7 at 77.)  During Deputy LoSavio's training, he also watched a PowerPoint Presentation that explicitly stated that sexual relations with inmates is a criminal violation.  (*Id.* at 56.)  Deputy LoSavio also acknowledged that he received training on the prohibition of sexual relations with inmates, and he acknowledged that the Sedgwick County Sheriff's Office has a zero-tolerance policy for sexual conduct with inmates.  (Doc. 48-6.)

Although Plaintiff preserved a failure-to-train theory in the pretrial order (Doc. 42 at 8), she does not press that theory with any zeal in her opposition to summary judgment.  Instead, the thrust of Plaintiff's argument is that Defendant Sheriff Easter was deliberately indifferent with respect to supervising his deputies—specifically, Deputy LoSavio.  Accordingly, the court concludes that the sheriff is entitled to summary judgment on Plaintiff's § 1983 failure-to-train theory.  Conversely, the court concludes that Plaintiff has raised sufficient evidence so that a jury must determine whether Sheriff Easter inadequately supervised Deputy LoSavio during and after the investigations for the alleged misconduct in the two 2019 incidents, and that he did so in a deliberately indifferent manner.

---

[6] The court notes that Defendant's evidence about LoSavio's training on PREA appears unclear.  However, Plaintiff does not dispute that Deputy LoSavio received training on PREA.

Under deliberate indifference, a plaintiff must first demonstrate that Sheriff Easter was on notice—actual or constructive—that the failure to supervise would likely result in a constitutional violation and that the Sheriff deliberately chose to disregard the risk.  *See Barney*, 143 F.3d at 1307.  Plaintiff argues that Defendant Sheriff Easter was on notice that Deputy LoSavio was likely to commit sexual battery because there were at least two prior claims of sexual harassment and sexual assault/battery against him.

The first complaint was investigated in 2019.  (Doc. 48-11 at 11.)  An inmate ("Complainant 1") claimed that Deputy LoSavio told her that he wanted to put his penis in between her buttocks.  (McMahon Dep., Doc. 48-4 at 15:23-16:2; Doc. 48-11 at 4.)  Complainant 1 told a deputy that Deputy LoSavio said this to her.  (Doc. 48-11 at 4.)  The deputy then informed Sergeant Rogers about what the inmate claimed, and when Sergeant Rogers asked Complainant 1 about the incident, she told Sergeant Rogers that she would not talk unless her lawyer was present.  (*Id.*) There is no evidence in the record indicating that Sergeant Rogers attempted to arrange a meeting with Complainant 1's lawyer, arrange a meeting where both the lawyer and Complainant 1 were both present, or otherwise explore ways by which he could obtain evidence from Complainant 1 to explore her claims.  The detective investigating Complainant 1's complaint spoke with Deputy LoSavio about the allegation, and he denied making the statement.  (Doc. 48-11 at 11.)  The detective who spoke to Deputy LoSavio also tried to speak with Complainant 1 about the allegations.  When she was released, he tried speaking to her on the phone but could not reach her, so he left her a voicemail.  (*Id.*) Complainant 1 returned the call and left a message for the detective saying that her lawyer would contact the detective.  (*Id.*) Complainant 1's lawyer never contacted the detective, and Complainant 1 did not give the detective information about her lawyer. (McMahon Dep., Doc. 48-4 at 16:14–21.)   The detective himself could not determine if

Complainant 1's claim was unfounded because he only had facts from Deputy LoSavio's perspective.  (McMahon Dep., Doc. 54-6 at 30:6–21.)  The detective presented the case to the District Attorney's office, and the Assistant District Attorney decided not to pursue the case because Claimant 1 was not cooperating.  (Doc. 54-1 at 10.)

Plaintiff claims that there are dates in the incident report that do not match.  (Doc. 54 at 23.)  Defendant Sheriff Easter does not dispute that.  The sexual assault report also reflects the conclusion that the incident was unfounded, meaning it did not occur.  (Doc. 54-1 at 8.)  The detective investigating the claim admitted he did not fill out the sexual assault form, (McMahon Dep., Doc. 54-6 at 10:19–24), and he stated in his deposition that he could not make a determination as to whether the claim was unfounded because he only had Deputy LoSavio's side of the story.  (*Id.* at 30:18–21.)

The second complaint was filed in December 2019, when an inmate ("Complainant 2") alleged that Deputy LoSavio entered her cell to unclog the toilet and touched her breast.  (Doc. 48-12 at 9; Robertson Dep., Doc. 48-5 at 10:6–11.)  Upon review of the security footage, the detective investigating this second complaint saw Deputy LoSavio enter the cell, appear to plunge the toilet because it looks like he was near the toilet, and then leave.  (Doc. 48-12 at 10; Robertson Dep. Doc. 48-5 at 15:8–16:10.)  However, the location of the camera was such that it could not capture all the activity within Complainant 2's cell; consequently, the detective was unable to see Complainant 2 or any interactions between her and Deputy LoSavio in the video footage.  (Doc. 48-12 at 10.)  In the detective's deposition, he explained that he could not see what was going on in the cell after Deputy LoSavio entered to allegedly plunge the toilet.  (Robertson Dep. Doc. 48-5 at 15:5–20.)  Complainant 2 also alleged during her conversations with the detective investigating her claim that Deputy LoSavio also touched himself in the cell because he had an

erection.   (Robertson Dep., Doc. 54-5 at 11:4–11.)   When the detective interviewed Deputy LoSavio, Deputy LoSavio claimed to have only gone into the cell and plunged the toilet.   (*Id.* at 16:7–10.)   The investigative report indicates that the Sheriff's Office determined Complainant 2's allegations to be unsubstantiated.   (Doc. 54-1 at 13.)   According to the Sheriff Office's forms, that means the "[e]vidence was insufficient to make a final determination that the event occurred." (Doc. 54-1 at 16.)   It was not determined to be unfounded.   (*Id.*)

As discussed by the court in *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008), under *Monell* a sheriff can be made aware of deficiencies or constitutional violations in a jail when inmates file civil lawsuits against guards that allege constitutional violations.   *See id.* at 921.   Although the two complaints filed against Deputy LoSavio were not civil lawsuits, Sheriff Easter admitted that he reviewed the allegations and was aware of the complaints.   While the question here is a close one, the court concludes that Plaintiff has put forth sufficient evidence challenging the thoroughness and effectiveness of the investigations of these two prior incidents alleging direct involvement of Deputy LoSavio in improper conduct of a sexual nature toward female inmates such that she is entitled to have a jury determine whether the sheriff was aware of a substantial risk that Deputy LoSavio would commit some sort of sexual assault against female inmates under his charge.

But under the deliberate indifference standard, there must also be a conscious disregard of the known risks.   Sheriff Easter contends that he did not consciously disregard the risks during and after the investigations.   The court disagrees, as there is sufficient evidence to create a dispute of material fact on the issue of whether Sheriff Easter disregarded the known risks Deputy LoSavio posed to female inmates.

b.   Causation

The court also concludes that there is a dispute of material fact regarding the element of causation. To establish causation, the policy or practice must be the "'moving force' behind the injury alleged." *See Brown*, No. 23-7006 at *9 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 404). Causation is typically a fact question for a jury. *Schneider*, 717 F.3d at 778 (10th Cir. 2013). The injury must be closely related to the alleged deficiency in training or supervision. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). The Court in *City of Canton* phrased the causation analytical framework in "but for" causation language: "[w]ould the injury have been avoided had the employee been trained [or supervised] under a program that was not deficient in the identified respect?" *Id.*

Here, there is a dispute of material fact as to whether the sheriff's inadequate supervision was the driving force for Plaintiff's constitutional injuries. Sheriff Easter contends that additional supervision would not have stopped Deputy LoSavio. However, there is evidence that Sheriff Easter, in the aftermath of the investigations against Deputy LoSavio, could have taken steps that might have prevented Deputy LoSavio from sexually battering and assaulting Plaintiff. For example, the evidence indicates Sheriff Easter could have assigned Deputy LoSavio to guard male inmates, and as a result, LoSavio's contact with female inmates would have be substantially reduced. (Easter Dep., Doc. 54-4 at 37:7–38:11.) He might still come into contact with female inmates, but it would not be in their pods. (*Id.* at 37:20–38:6.) Therefore, the court declines Defendant's motion for summary judgment on the issue of causation and holds that a jury is to make a finding on the element of cause.

### 3. State Law Claims

Plaintiff appears to dispute Defendant Sheriff Easter's motion for summary judgment on the state claims via alternative theories. The first is that there are genuine disputes of material fact

that indicate a reasonable jury could find Defendant Sheriff Easter negligent on a similar factual basis as that which supports her § 1983 claim.  (Doc. 54 at 25.) The second argument is that Sheriff Easter is liable under the negligence claim and under respondeat superior because of K.S.A. § 19-811.  (*See id.*)  The court will consider each argument, but it will analyze the statutory argument first.

      a.   K.S.A. § 19-811

Plaintiff argues that K.S.A. § 19-811 is a special statute because its plain language holds sheriffs responsible for the conduct of their deputies.  (*Id.* at 26.)  Indeed, the plain language of the statute provides that the sheriff is liable for the acts of those keeping the jail on behalf of the sheriff:

> The sheriff shall have the charge and custody of the jail of his county, and all the prisoners in the same, and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable.

K.S.A. § 19-811.  It's difficult to get any plainer than that.  Nevertheless, Plaintiff admits that the statute has not been applied to hold sheriffs liable for the conduct of their deputies or employees, nor is there any caselaw that appears to address the matter.  (*Id.* at 25.)

Without a controlling state decision, a federal court needs to predict how the state supreme court will interpret a state statute.  *See United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004) (citing *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)).  Moreover, when federal courts interpret state statutes, they do so by following the rules of statutory construction embraced by the state where they sit.  *See id.* at 1145–46. In Kansas, statutory interpretation begins with the language, and if it is clear, there is no need for canons of statutory construction or to consult the legislative history.  *See Roe v. Phillips Cnty. Hosp.*, 317 Kan. 1, 5, 522 P.3d 277, 280 (2023) (citing *State v. Wells*, 296 Kan. 65, 83, 290 P.3d 590, 604 (2012)).

However, even if the language is clear, a court still must consider the other relevant provisions of the act and ensure they are applied in harmony with one another. *See id.* at 5–6.

The parties barely address this matter; thus, the court is hesitant to make any sweeping conclusions that this statute, which has been on the books for over 150 years, makes sheriffs vicariously liable for all acts of their jailhouse personnel.  Suffice it to say at this point that the statutory language is capable of that interpretation; therefore, the court will not eliminate the possibility that such an interpretation could apply here.  Instead, this is an issue that can be addressed through such things as appropriate jury findings on the verdict form to determine whether the jury finds liability on the basis of vicarious liability under K.S.A. § 19-811, or on the basis of the sheriff's own actions or omissions.

b. Negligence

Plaintiff also asserts a state law negligence claim against Defendant Sheriff Easter. According to the pretrial order, Plaintiff alleges Sheriff Easter was negligent because he failed to protect Plaintiff from the known proclivity of Deputy LoSavio to commit sexual assault and battery against female inmates.  (Doc. 42 at 8.)  In response, Sheriff Easter raised two immunity arguments as well as responded to the merits of Plaintiff's allegations.  (Doc. 48 at 20–23.)  Sheriff Easter first argues that Plaintiff's negligence claims are barred by discretionary and police protection immunity. (Doc. 48 at 20–22.)  In the alternative, Easter argues (1) that Deputy LoSavio's sexual battery was not a reasonably foreseeable risk of harm to Plaintiff, and (2) there was no causal connections between the alleged breach and the sexual battery.  (Doc. 48 at 22–23.)  Plaintiff relies upon her § 1983 *Monell* liability arguments to respond to Sheriff Easter's merit-based defenses. (Doc. 54 at 25–27.)

In Kansas, to prevail on a negligence claim, a plaintiff must prove the following four elements: (1) duty, (2) breach, (3) causation, and (4) damages. *See Reardon for Est. of Parsons v. King*, 310 Kan. 897, 903, 452 P.3d 849, 854 (2019). There is a special relationship between a governmental entity and a person in custody of that entity. *Jackson v. City of Kansas City*, 263 Kan. 143, 156–57, 947 P.2d 31, 40–41 (1997). This special relationship imposes a duty of reasonable care on the governmental entity to protect the person in custody from harm by third parties. *See id.* However, a governmental entity or actor is not liable for harm done to the person in custody when the government entity or actor did not know or could not have foreseen the unreasonable risk of harm. *See Cupples v. State*, 18 Kan. App. 2d 864, 876, 861 P.2d 1360, 1370 (1993). In other words, when the harm is not reasonably foreseeable, then there is no duty to protect the person in custody from that specific risk of harm.

Defendant Sheriff Easter argues he did not have a duty to protect Plaintiff from Deputy LoSavio because he was neither aware of nor could have been aware of Deputy LoSavio's proclivity to sexually assault an inmate. (Doc. 48 at 22–23.) Sheriff Easter maintains this position despite the two previous investigations against Deputy LoSavio for sexual harassment and assault/battery. By contrast, Plaintiff argues that the previous two complaints by female inmates against Deputy LoSavio indicate Sheriff Easter was aware of the risk of harm to Plaintiff. Plaintiff argues that Sheriff Easter had actual or constructive knowledge—under the *Monell* deliberate indifference standard—that Deputy LoSavio had a proclivity to sexually batter inmates. (Doc. 54 at 20.) Plaintiff argues that because Sheriff Easter had actual or constructive notice of Deputy LoSavio's proclivity, Sheriff Easter then owed Plaintiff a duty to protect her while she was in custody.[7] Plaintiff relies on *Gonzales v. Martinez*, 403 F.3d 1179 (10th Cir. 2005), for the

---

[7] Plaintiff is not explicit about this argument. Plaintiff does not direct this court to specific arguments from the *Monell* liability analysis, leaving the court to identify what it deems to be "relevant" material.

proposition that a sheriff's knowledge of reported risks to inmate safety supports an inference that a sheriff knew of and disregarded those risks to a plaintiff.  (Doc. 54 at 21.)

Here, there were two instances of sexual harassment or assault/battery reported against Deputy LoSavio, and Sheriff Easter reviewed both of the complaints and investigations when they occurred.  (Easter Dep., Doc. 48-2 at 14:24–16:2).  Upon review of the evidence from the investigations, he concluded they were unsubstantiated, not unfounded.  (*See id.* 34:4–14).

The court concludes that a jury could reasonably find that because of the prior investigations, Defendant Sheriff Easter was aware of Deputy LoSavio's proclivity to commit sexual assault and battery such that his conduct was reasonably foreseeable.  Thus, the court declines to grant summary judgment to Defendant on the element of duty.

However, Defendant Sheriff Easter, in addition to his "duty" argument, also argues that there is no dispute of material fact regarding the element of causation.  Sheriff Easter argues that Plaintiff cannot provide evidence to support a reasonable inference that his conduct more likely than not caused Plaintiff's injuries.  (Doc. 48 at 23.)   A plaintiff must introduce sufficient evidence that creates a reasonable basis to conclude that the defendant's conduct was a cause in fact of the injury alleged.  *Yount v. Deibert*, 282 Kan. 619, 628, 147 P.3d 1065, 1072 (2006) (quoting Prosser & Keeton on Torts § 41, pp. 269–70 (5th ed.1984)).  Sheriff Easter relies on a medical malpractice case for the legal rule that causation cannot be established via conjecture or speculation.  (Doc. 48 at 23) (citing *Drouhard-Nordhus v. Rosenquist*, 301 Kan. 618, 624–25, 345 P.3d 281, 286–87 (2015)).  This rule or standard is consistent with the discussion of causation in *Yount*.  282 Kan. at 628.  The court in *Yount* also discuss Prosser and Keeton's requirement that if the probabilities of causation are evenly balanced between both parties, a court must enter judgment in favor of the defendant.  *See id.*  Thus, under Kansas law, Plaintiff needs to provide evidence that is not based

on mere speculation or conjecture that would allow a jury to reasonably conclude that a defendant's conduct or lack thereof more likely than not caused a plaintiff's injuries.

Sheriff Easter argues that Plaintiff has no reason to believe that additional training or supervision would have prevented Deputy LoSavio from sexually assaulting and battering her. (Doc. 48 at 23.)  Sheriff Easter also asserts that Plaintiff's failure to report Deputy LoSavio's sexual misconduct that had occurred prior to the battery is an intervening cause.  (*See id.*)

However, Plaintiff provided evidence indicating Defendant Sheriff Easter failed to protect Plaintiff from Deputy LoSavio's reasonably foreseeable proclivity to commit sexual assault, and hence, his conduct more likely than not caused Plaintiff's injuries.  Therefore, the court concludes that a determination on the element of causation is best left to a jury.

Defendant Sheriff Easter also argues that discretionary immunity and police protection immunity bars Plaintiff's state law negligence claims.  The court is not persuaded by Defendant's immunity argument and concludes that they do not bar Plaintiff's claims.  Sheriff Easter also asserts that Plaintiff's failure to report Deputy LoSavio's sexual misconduct that had occurred prior to the battery is an intervening cause.  ((Doc. 48 at 23.)  The court is not convinced by this argument either, and declines to issue summary judgment to Defendant on those grounds.

### 4.    *Vicarious Liability/Respondeat Superior*

Plaintiff argues that Sheriff Easter was vicariously liable for Deputy LoSavio's wrongful acts.  Sheriff Easter argues that he cannot be liable for LoSavio's wrongful conduct because the sexual battery was not within the scope of LoSavio's employment.  (Doc. 48 at 23.)

Based on Plaintiff's reference to vicarious liability in Section E of her response, (Doc. 54 at 25–26), Plaintiff seems to argue that Sheriff Easter can be vicariously liable for Deputy LoSavio's conduct because of K.S.A. 19-811.  (*See id.*)  Plaintiff argues that K.S.A. 19-811 is a

special statute because its plain language holds sheriffs responsible for the conduct of their deputies. (*Id.* at 26.)  As discussed, this theory of liability remains a viable argument and the court will not make a ruling on it without more extensive/proper briefings from the parties.

However, outside of K.S.A. § 19-811, Plaintiff still alleges a state law claim of respondeat superior against Defendant Sheriff Easter under the Kansas Tort Claims Act  ("KTCA").  (Doc. 42 at 8.)  With respect to this vicarious liability claim predicated on the KTCA, Sheriff Easter prevails and summary judgement is granted to him.  Sheriff Easter does not dispute that a sheriff can be held liable for the wrongful conduct of his deputies.  Rather, Sheriff Easter relies upon K.S.A. 75-6103 and *Com. Bank of St. Joseph, N.A. v. State*, 251 Kan. 207, 833 P.2d 996 (1992), for the legal rule that a state actor is vicariously liable for an employee's conduct but only when that conduct is within the scope of the employee's employment and authority.  *Com. Bank of St. Joseph, N.A.*, 251 Kan. at 215.  If the conduct falls outside the scope of employment, the state actor is not vicariously liable.  Apropos to the present case, when a prison guard or supervisor commits sexual assault against an inmate, that conduct has been deemed as falling outside the scope of employment.  *See Meyer v. Nava*, 518 F. Supp. 2d 1279, 1290 (D. Kan. 2007).  Thus, even though Sheriff Easter acknowledges that under Kansas law, there are instances where liability could be imposed through vicarious liability; here, there are no grounds for imposing vicarious liability because Deputy LoSavio's sexual assault of Plaintiff during work was an act outside the scope of his employment.  (Doc. 48 at 24.)

To be clear, however, because the applicability of K.S.A. § 19–811 is still in dispute, the court does not award summary judgment to Sheriff Easter on Plaintiff's vicarious liability claim predicated on K.S.A. § 19–811.

### C.  Declaratory Judgment on Cross-Claim Against Deputy LoSavio

Defendants also seek declaratory judgment on their cross-claim against Deputy LoSavio on the issue of whether they have an obligation presently and in the future to defend and indemnify him against the damage to Plaintiff caused by his conduct.

A federal district court is not obligated to hear claims of declaratory judgment. *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 980 (10th Cir. 2012). Indeed, the Supreme Court has noted that the use of the word "may" in the Declaratory Judgment Act "confers upon courts the power, but not the duty, to hear claims for declaratory judgment." *See id.* (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). Additionally, the Tenth Circuit Court of Appeals in *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979 (10th Cir. 1994), adopted five factors that should guide a district court's analysis regarding whether or not to hear a declaratory judgment action:

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata "; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 983. Defendants do not brief the court on each *Mhoon* factor. Instead, Defendants appear to argue that declaratory judgment is appropriate in the present instance because it would clarify the legal relations between Defendants and Deputy LoSavio.

Defendants argue that they do not have an obligation to defend or indemnify Deputy LoSavio. Defendants argue that under the KTCA, state governmental entities are liable for damages from a negligent or wrongful act only when it was committed in the scope of an employee's employment. *See* K.S.A. 75–6103(a). As already discussed, sexual assault or sexual harassment is not within the scope of a state government employee's employment. *See Meyer*,

518 F. Supp. 2d at 1290.  Furthermore, under the KTCA, a government entity is permitted to refuse to defend an action against a government employee if "(1) [t]he act or omission was not within the scope of such employee's employment; [or] (2) such employee acted or failed to act because of actual fraud or actual malice . . . ."  K.S.A. 75-6108(c)(1)-(2).  Defendants argue that they are permitted to refuse to defend Deputy LoSavio under both the scope and actual malice subsections. For purposes of this order, the court need not make a ruling on Defendants' actual malice argument because it has already determined that Deputy LoSavio was acting outside of the scope of his employment.  Thus, under K.S.A. 75–6103, Defendants do not have a duty to indemnify Deputy LoSavio, and under K.S.A. 75-6108(c)(1), Defendants do not have the legal obligation to defend Deputy LoSavio.

Because this declaratory judgment ruling would both settle the controversy between Defendants and Deputy LoSavio as well as clarify the legal relationship between Defendants and Deputy LoSavio, the court rules in favor of Defendants on their motion for summary judgment for cross-claim declaratory judgment action against LoSavio.  The court's decision to rule in favor of Defendants is bolstered by LoSavio's failure to respond to Defendants' motion for summary judgment on this issue.

## V.     Conclusion

IT IS THEREFORE ORDERED BY THE COURT THAT Defendants' motion for summary judgment against Plaintiff (Doc. 48) is GRANTED IN PART AND DENIED IN PART. Additionally, the court ORDERS that Defendants' motion for declaratory judgment against Tony LoSavio (Doc. 48) is GRANTED.

IT IS SO ORDERED.  Dated this 27th day of February, 2024.

__s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE