IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KENNA ROTHERMEL,

                Plaintiff,

v.                                            Case No.  22-1194-JWB

SHERIFF JEFF EASTER, and
TONY LOSAVIO

                Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Plaintiff's motion for a new trial and/or to alter or amend judgment.  (Doc. 101.)  She also requests attorney's fees on the basis that she is a prevailing party in a 42 U.S.C. § 1983 claim.  (*Id.*)  The motion is fully briefed and ripe for decision.[1]  (Docs. 101, 102.)  The motion is DENIED IN PART AND GRANTED IN PART for the reasons stated herein.

## I.    Facts

Plaintiff Kenna Rothermel was an inmate at the Sedgwick County Detention Facility during the period of February 2021 through May 2021.  (Doc. 42 ¶ 2.a.i.)  Defendant Sheriff Jeff Easter ("Sheriff Easter") was the duly elected Sheriff of Sedgwick County during this period.  (*Id.* at ¶ 2.a.ii.)  Defendant Deputy Tony LoSavio ("Deputy LoSavio") was employed at the Sedgwick County Detention Facility during this time period as well.  (*Id.* at ¶ 2.a.iv).  Plaintiff was sexually assaulted by Deputy LoSavio on May 1, 2021.  (Doc. 48-8 at 2–3).  Prior to the sexual assault, Plaintiff alleged that Deputy LoSavio had been harassing her for a few months.  (Doc. 48-9 at 3.)

---

[1] Plaintiff did not file a reply, and the time do so has now passed.

After granting in part and denying in part Defendant Sheriff Easter's motion for summary judgment, the case proceeded to trial. There were two remaining claims against Sheriff Easter: (1) a 42 U.S.C. § 1983 claim, and (2) a Kansas state law negligence claim. (Doc. 99 at 2.) There were also three remaining claims against Deputy LoSavio: (1) a 42 U.S.C. § 1983 claim, (2) a Kansas state law battery claim, and (3) a Kansas state law outrageous conduct claim. (*Id.* at 1.) The jury found in favor of Sheriff Easter for the two claims against him. The jury found in favor of Plaintiff for her three claims against Deputy LoSavio. (*Id.* at 2.) However, the jury concluded that Plaintiff did not suffer significant emotional distress and award her $1.00 in nominal damages. (*Id.*)

Plaintiff disagrees with the jury's conclusion on damages, and accordingly, filed a motion for a new trial pursuant to Fed. R. Civ. P. 59(a)(1)(A) and/or to alter or amend the judgment pursuant to Fed. R. Civ. P. 59(e) on the issue of damages. (Doc. 101.) She also requested attorney's fees against Deputy LoSavio because she prevailed on her claims against him. (*Id.* at 6.)

## II.    Analysis

### A.    Rule 59(e) – Motion to Alter the Judgment

Plaintiff asks the court to alter the final judgment entered on the jury verdict pursuant to Fed. R. Civ. P. 59(e). (Doc. 101 at 2.) However, Plaintiff's briefing doesn't address her Rule 59(e) motion. There is no discussion of the standards that govern these motions nor any assertion that her Rule 59(a)(1)(A) arguments also support her Rule 59(e) motion. Under Tenth Circuit law, courts may grant Rule 59(e) motions when "the court has misapprehended the facts, a party's position, or the controlling law." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (citation omitted). Plaintiff fails to put forth an argument premised on any of those three categories. From the court's perspective, the only subsection in Plaintiff's brief that may apply to

2

a Rule 59(e) argument is the "Error" of law subsection directed toward her Rule 59(a)(1)(A) motion. However, Plaintiff fails to cite any case law in this subsection that would demonstrate how the court misapprehended controlling law. Without proper briefing, the court cannot assess Plaintiff's Rule 59(e) motion. Thus, it is denied.

### B.    Rule 59(a)(1)(A)

Plaintiff requests a new trial under Rule 59(a)(1)(A) on two grounds: (1) the evidence does not support the jury's award of nominal damages, and (2) the court committed a legal error by including a nominal damages instruction in the final jury instructions.

### 1.    Rule 59(a)(1)(A) Standard

A court may grant a new trial on some or all of the issues pursuant to Fed. R. Civ. P. 59(a)(1)(A). *Stroup v. United Airlines, Inc.*, No. 15-CV-01389-DDD-STV, 2019 WL 8359562, at *10 (D. Colo. Sept. 4, 2019), *aff'd*, 26 F.4th 1147 (10th Cir. 2022). A court does not, however, consider evidence in a light more favorable to one party under Rule 59(a)(1)(A). *See Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008). "Instead, a new trial may be granted if the district court concludes the 'claimed error substantially and adversely' affected the party's rights." *Id.* (citation omitted). The error must be prejudicial; meaning, that without the error, there would have been a different outcome. *See Bridges v. Wilson*, 996 F.3d 1094, 1099 (10th Cir. 2021). Additionally, when a new trial motion alleges that insufficient evidence supports the verdict, "a district court must analyze whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *See Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (quotation and citation omitted). It must do so while remembering that the jury is the appraiser of credibility and responsible for resolving evidentiary conflicts, weighing testimony,

and reaching the conclusions of fact.  *See Snyder v. City of Moab*, 354 F.3d 1179, 1188 (10th Cir. 2003).

    *2.  Weight of Evidence*

    Plaintiff argues that the evidence admitted during trial supports a damages award that exceeds the one dollar in nominal damages the jury awarded.  Plaintiff correctly notes that the jury concluded Deputy LoSavio committed the torts of battery and outrage when he sexually assaulted Plaintiff.  (Doc. 99 at 1.)

    Plaintiff does not cite to the trial transcript.  Instead, throughout her brief, she claims to have testified on an issue or about a specific topic. According to Plaintiff, she claims to have testified to the following matters.  Because of Deputy LoSavio's crimes and torts, she remembered being sexually assaulted as young girl.  She will never forget what LoSavio did to her. She faced retaliation for reporting Deputy LoSavio's crimes and was called a slut for what had occurred. Deputy sheriff officers commented that she performed the sexual acts consensually to curry favor with Deputy LoSavio.

    Plaintiff argues that the jury believed she had suffered at least some emotional distress because of its conclusion that Deputy LoSavio committed the tort of outrageous conduct.  The fourth element of the tort of outrageous conduct is: "Plaintiff's mental distress was extreme and severe."  (Doc. 97 at 20.)  To conclude that Plaintiff's mental distress was extreme and severe, the jury was instructed that it would need to find her "emotional distress was genuine and so severe, and to such an extreme degree, that no reasonable person should be expected to endure it."  *Id.* Despite concluding that Deputy LoSavio committed the tort of outrageous conduct, the jury only awarded Plaintiff $1.00 in nominal damages.  Plaintiff asserts this allegedly incongruent result supports a finding that the weight of the evidence does not support the nominal damages award.

However, Defendant Sheriff Easter introduced evidence at trial that called into question Plaintiff's emotional distress.  Sheriff Easter introduced a phone call between Plaintiff and her boyfriend.  This call occurred shortly after Deputy LoSavio sexually assaulted Plaintiff, and during the conversation, Plaintiff sounded giddy and excited about the prospect of pursuing a civil lawsuit against Deputy LoSavio for his unlawful and tortious conduct.  During that call she laughed and did not give any indication that she was in distress.  Moreover, on May 4th, just three days after the assault, two officers interviewed Plaintiff about the incident.  The interview occurred in an interrogation room and was recorded on video.  At some point during the interview, the officers left the room and a protracted break ensued.  Plaintiff sat alone in the interview room for over six hours.  During that extended break in the discussion, Plaintiff showed no signs of distress, depression, or any other emotional anguish.  On the contrary, she looked bored but content, staring at the wall and ceiling, reclining in a chair, attempting to fall asleep, and otherwise trying to entertain herself and pass the time.  Importantly, for purposes of the current motion, from a layperson's perspective Plaintiff did not seem to exhibit any of the signs of emotional harm or distress to which Plaintiff testified at trial or that one might expect from a person who suffered LoSavio's assault.  Additionally, when one of the interviewing officers returned to further discuss what had occurred to Plaintiff, she expressed a concern for Deputy LoSavio and stated that she did not want him harshly punished for his conduct.

Hence, the jury was confronted with an evidentiary contradiction.  On the one hand, Deputy LoSavio committed a heinous act that to any layperson's perspective amounted to outrageous conduct and, as to which Plaintiff testified that it had greatly distressed her.  However, on the other hand, Plaintiff's conduct and attitude in the days immediately after the assault—as indicated by the phone conversation introduced into evidence, as well as the video from the interrogation

room—indicated that Deputy LoSavio's conduct did not seem to cause Plaintiff any lasting emotional distress. The court certainly recognizes that different people deal with traumatic experiences in different ways, and it was certainly possible that Plaintiff may have struggled with deep emotional harm stemming from LoSavio's assault in spite of the lack of evidence of that distress in her outward appearance, but that would have been a topic to be addressed by a professional with proper expertise to explain how Plaintiff suffered the degree of harm that she alleged at trial in spite of the evidence to the contrary that Defendant provided to the jury. This Plaintiff failed to do. Accordingly, the jury was left to weigh the conflicting evidence on her emotional damages and decide whether, and to what extent, to credit Plaintiff's testimony on that subject. It did so by finding Deputy LoSavio committed the tort of outrageous conduct but not awarding Plaintiff compensatory damages. Although the jury's conclusions may seem at odds, the standard for a new trial under Rule 59(a)(1)(A) is that the jury's verdict is "clearly, decidedly or overwhelmingly against the weight of the evidence." That standard is not satisfied here. Indeed, the jury's award of one dollar in nominal damages was not based on a disregard for Plaintiff's alleged emotional distress. Rather, it appears to have been based on the evidence Sheriff Easter introduced that demonstrated Plaintiff's nonchalant attitude toward the situation and excitement about pursuing a civil lawsuit.

The jury was faced with a difficult task. On the one hand, LoSavio's conduct was clearly shocking and unlawful. But the challenge for the jury was reconciling LoSavio's misconduct with the evidence of Plaintiff's damages. While Plaintiff testified to the harm she felt as a result of LoSavio's actions, that testimony was difficult to reconcile with the video and audio evidence documenting her statements and actions shortly after the event. Weighing this conflicting evidence—which supported either a compensatory damages award or a nominal damages award—

6

the jury concluded that Plaintiff had not suffered emotional distress that could be quantified and only awarded her nominal damages. This verdict, although perhaps difficult to understand on a cold record, seems to represent the jury's efforts to account for all the evidence. The verdict finding LoSavio committed the tort of outrage seems to acknowledge the shocking impropriety of what he did, while the nominal damages award seems to represent the jury's conclusion that it believed Plaintiff's statements and actions in the immediate wake of the assault were more reflective of the harm she actually suffered than her testimony from the witness stand. Based on the foregoing, the court concludes that the jury's verdict on damages was supported by evidence introduced at trial; thus, the verdict is not overwhelmingly against the evidence.

*3. Error*

Next, Plaintiff argues that the court committed legal error when it instructed the jury on awarding nominal damages if the jury concluded that "Plaintiff has suffered no harm, insignificant harm, or damages that cannot be ascertained . . . ." (Doc. 97 at 21.) Plaintiff asserts that she objected to this instruction during the instruction conference. (Doc. 101 at 5.) Curiously, she provides no citation to the record for this assertion.

In order to properly object to a jury instruction, a party must "stat[e] distinctly the matter objected to and the grounds for the objection" on the record. Fed. R. Civ. P. 51(c)(1); *see Donahue v. United Parcel Serv., Inc.*, No. 2:19-CV-02725-TC, 2022 WL 4016696, at *1 (D. Kan. Sept. 2, 2022), *aff'd*, No. 22-3132, 2024 WL 3756550 (10th Cir. Aug. 12, 2024). The purpose of objecting to jury instructions is that it gives courts an opportunity to identify possible errors and resolve them before jury deliberations. *See Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 553 (10th Cir. 1999).

Plaintiff's version of the events surrounding the inclusion of the nominal damages instruction is as follows:

During the instruction conference, Plaintiff objected to Defendant Easter's request to include nominal damages, arguing that such additional language was unnecessary and inappropriate and that the damage instruction as proposed by the Court was fine. There was no additional instruction conference.

Toward the end of the last day of trial, the Court expressed urgency during examination of the final witness (at about 3:00 pm) that the Court intended to get the case submitted to the jury that afternoon approximately 30 minutes later. The parties rested and the Court adjourned to chambers to print the instructions, shortly after which the Court returned to the courtroom, handed out the set of instructions and within minutes read them to the jury without further opportunity to object or express concern about their content.

(Doc. 101 at 5.)

The court finds that Plaintiff's version of the events does not square with the record in this case in a few important respects. Plaintiff was first placed on notice that Sheriff Easter was pursuing a nominal damages instruction when the sheriff filed his proposed jury instructions on June 13, 2024. (Doc. 71.) Easter's proposed instructions included a damages instruction that directed the jury, among other things, as follows:

If you find that a Plaintiff has established a right to recover from Defendant, but that Plaintiff has suffered no harm, insignificant harm, or damages that cannot be ascertained, you must award her nominal damages. Nominal damages are a trivial sum of money, usually one dollar, awarded to a party who has established a right to recover but has not established that she is entitled to compensatory damages.

(*Id.* at 17.) The trial commenced some twelve days later on June 25, 2024. Then on June 27th, prior to the close of the evidence, the court conducted an instruction conference with the lawyers. The damages instruction in the draft instruction set reviewed by the parties at the instruction conference did not include the material on nominal damages that Sheriff Easter requested in his proposed instructions. When the court reached that instruction during the instruction conference, Sheriff Easter objected to the omission of the nominal damages language.[2] After listening to

---

[2] In presenting her current motion, Plaintiff did not obtain a certified transcript of the trial. Accordingly, in evaluating this motion, the court reviewed an uncertified realtime transcript, which comported with the court's recollection of the events described and the language quoted herein.

Easter's objection, the court indicated that, while there was plenty of evidence to support an award of compensatory damages if the jury credited Plaintiff's testimony on that point, the court would go ahead and include the language on nominal damages in case the jury did not believe Plaintiff's testimony on the extent of her damages. The court then asked Plaintiff's counsel whether Plaintiff had any objection to including it, to which he responded in full, "I mean we would – we would suggest leaving the instruction as is. We think it is sufficient as is *and we agree with your analysis of the damage issue*." Contrary to Plaintiff's assertion in her brief, that is not an objection. Indeed, Plaintiff expressly agreed with the court's analysis as explained on the record at the instruction conference, the totality of which reads as follows:

> I mean I could put [the nominal damages language] in there. I don't think there's any – just listening to [Plaintiff's] testimony, if they find in her favor, I think they've got plenty to – plenty of evidence to try to establish what the amount of actual damages are but I can put it in there. It doesn't bother me.

That analysis by the court at the instruction conference indicated that there was nothing legally infirm about including the nominal damages instruction; rather, the court recognized that it might be applicable if the jury rejected Plaintiff's testimony regarding the extent of her damages. And as described earlier in this order, there was critical evidence in the case that painted wildly different pictures of the extent of Plaintiff's damages. Upon reflecting on Sheriff Easter's objection to the omission of the nominal damages instruction, the court recognized the possibility that the jury might not credit Plaintiff's testimony on her damages and thus concluded that it was appropriate to include the nominal damages instruction.

If that were the end of the matter, Plaintiff's assertion that she properly objected to inclusion of the nominal damages instruction might not be so striking since it simply reflects a debatable view as to whether her counsel's statements about the nominal damages language at the instruction conference amounted to a proper objection or simply, as the court interprets it, a mere

argument that the better course would be to leave that language out of the damages instruction. But that is not the end of the matter because Plaintiff goes on in her motion to assert that the court rushed to finalize instructions at the end of the trial and precluded Plaintiff from making any further objections. (Doc. 101 at 5.)

In stark contrast with Plaintiff's version of events, the rough transcript shows that immediately after charging the jury, the court asked the parties (as it always does as a matter of trial procedure; *see* Fed. R. Civ. P. 51(a)(2), (c)(2)(B)) whether either party had "any objections to the charge or any requested additional instructions?" Plaintiff's counsel promptly responded with "Not from Plaintiff, your honor." Thus, contrary to Plaintiff's assertion, she had not only one, but two opportunities to object to the inclusion of a nominal damages instruction, and she failed both times to lodge any objection or make any meaningful effort to put the court on notice that she thought the instruction was legally improper rather than simply undesirable from her perspective. Moreover, as noted previously, while it was not so clear at the beginning of the case that the evidence might support a nominal damages instruction, it had become quite clear toward the end of trial that Plaintiff's statements and conduct shortly after LoSavio's misconduct could be construed by the jury as inconsistent with her damages testimony, and thus the jury might have to make some critical credibility determinations that could impact their verdict with respect to Plaintiff's damages, particularly her request for compensatory damages.

Based on the foregoing, the court concludes that Plaintiff failed to properly object to inclusion of the nominal damages instruction, even though she was afforded at least two opportunities to do so. Accordingly, Plaintiff is limited to plain error review of the nominal damages instruction. *See* Fed. R. Civ. P. 51(d)(2).

> "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects
> substantial rights, and which (4) seriously affects the fairness, integrity, or public

reputation of judicial proceedings." *United States v. Gonzalez–Huerta*, 403 F.3d 727, 732 (10th Cir.2005) (en banc) (internal quotation marks omitted). "[A]n error is 'plain' if it is clear or obvious at the time of the appeal...." *Id.* And an error affects substantial rights when the error "affected the outcome of the district court proceedings." *Id.* (internal quotation marks omitted). The burden is on [the objecting party] to show "a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Fields*, 516 F.3d 923, 944 (10th Cir.2008) (internal quotation marks omitted).

*United States v. Harris*, 695 F.3d 1125, 1130 (10th Cir. 2012). The same standard applies when a district court reviews a challenge to jury instructions in a post-trial context. *See Stoedter v. Gates*, No. 2:12-CV-00255-BSJ, 2015 WL 3882526, at *12 (D. Utah June 17, 2015), *aff'd*, 704 F. App'x 748 (10th Cir. 2017).

Plaintiff's primary argument on this point is that the court's instructions likely confused the jury.[3] (Doc. 101 at 5.) She asserts that had the nominal damages instruction been removed, the outcome of the case would have been different in that the jury would have awarded compensatory damages. (*See id.* at 5–6.) As already explained, the court is not convinced that the instruction was erroneous at all; but even if it was, the error certainly was not plain. As bizarre as it may seem on a cold record that the jury might have had cause to reject Plaintiff's testimony on the nature and extent of her damages, the video and audio evidence previously discussed on this point had the potential to do precisely that; and, apparently, that is the effect that evidence actually had on the jury. Moreover, it is far from clear that the inclusion of the nominal damages language affected the outcome in a legally meaningful way. Even without the nominal damages instruction, the jury was free to accept or reject Plaintiff's testimony, in whole or in part. It is apparent from the verdict that the jury accepted the impropriety of LoSavio's misconduct but rejected Plaintiff's

---

[3] Plaintiff also challenges the propriety of allowing Sheriff Easter to argue for nominal damages. (Doc. 101 at 6.) However, Plaintiff's state and federal claims against Easter went to the jury. Thus, it was not improper for Easter to argue not only that Plaintiff had failed to show that Easter was liable on those claims, but that even if the jury found him liable on one or both claims, Plaintiff's evidence fell short on compensatory damages and she should only be awarded nominal damages.

testimony on the nature and extent of her damages. This they were free to do regardless of the nominal damages instruction. Accordingly, the court concludes that even if the nominal damages language had been excluded from the jury instructions, the jury would still likely have given Plaintiff little to no damages. They clearly concluded that her testimony on that point was unworthy of belief. The contested instruction did not change that calculus.

### C.    Attorney's Fees and Costs

Plaintiff also requests attorney's fees pursuant to 42 U.S.C. § 1988 as the prevailing party in her § 1983 claim against Deputy LoSavio. Sheriff Easter does not have a position on this matter. (Doc. 102 at 1.) Section 1988 allows a court to grant reasonable attorney's fees to the prevailing party in a 42 U.S.C. § 1983 claim. *See* 42 U.S.C. § 1988(b). A party that only recovers nominal damages qualifies as a "prevailing party" under § 1988. *See Koopman v. Water Dist. No. 1 of Johnson Cnty., Kan.*, 41 F.3d 1417, 1420 (10th Cir. 1994). However, although a party's recovery of nominal damages may not negate the finding that it is the prevailing party, it does "bear on the propriety of fees awarded under § 1988." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992). There are three elements to determine whether a prevailing party achieved sufficient success to recover attorney's fees: (1) the difference between the judgment recovered and the judgment sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation." *Brandau v. State of Kansas*, 168 F.3d 1179, 1181 (10th Cir. 1999) (citation and quotations omitted).

Here, Plaintiff is the prevailing party under § 1988 because she recovered nominal damages. Additionally, the court concludes that she achieved sufficient success to recover attorney's fees. First, Plaintiff brought five claims in her lawsuit against Sheriff Easter and Deputy LoSavio. The jury ruled against Plaintiff on her two claims against Sheriff Easter. (Doc. 99 at 2.)

However, the jury found in Plaintiff's favors for her three claims against Deputy LoSavio. (*Id.* at 1.) Two were Kansas state law tort claims: battery and outrageous conduct, and the third was a § 1983 claim against Deputy LoSavio for violating her Eighth and Fourteenth Amendment rights. Because Plaintiff was successful on three of her five claims, the court finds that element one weighs in her favor. Second, Plaintiff's civil action against Deputy LoSavio was based upon his rape of Plaintiff while on duty as a guard in the Sedgwick County Detention Center. The case presented was a stress test for Sheriff Easter's reporting system on prison guard misconduct. During the trial, Sheriff Easter realized that there were reporting breakdowns and issues within his system. Thus, Plaintiff prevailed on a legal issue that exposed weaknesses in a system designed to keep inmates and detainees safe. The court finds that second element also weighs in favor of Plaintiff. Lastly, Plaintiff's claim serves an important public purpose because it exposed deficiencies in the Sheriff's misconduct reporting system and should serve as a deterrence to other guards. Thus, all three elements weigh in favor of Plaintiff, and she is entitled to attorney's fees against Deputy LoSavio. In order to make a final determination as to the appropriate amount of any attorney fees, Plaintiff is directed to submit a motion under Rule 54(d)(2) that specifies the amount of reasonable amount of attorney's fees that Plaintiff requests, along with supporting documentation and analysis. Plaintiff shall indicate in that motion whether a hearing is necessary or whether the court may rule on the papers.

## III.    Conclusion

THEREFORE, Plaintiff's motion for a new trial on the issue of damages and/or to amend/alter the judgement on that issue is DENIED. Plaintiff's motion for attorney's fees is GRANTED. She is to submit the motion that specifies a reasonable amount of attorney's fees with supporting documentation and analysis within fourteen days of the filing of this order.

IT IS SO ORDERED.  Dated this 27th day of February, 2025.


                                        s/ John W. Broomes
                                        JOHN W. BROOMES
                                        UNITED STATES DISTRICT JUDGE